1  CROSNER LEGAL, P.C.
2  Jennifer L. MacPherson (SBN 202021)
   *jmacpherson@crosnerlegal.com*
3  Craig W. Straub (SBN 249032)
   *craig@crosnerlegal.com*
4  Zachary M. Crosner (SBN 272295)
5  *zach@crosnerlegal.com*
   9440 Santa Monica Blvd. Suite 301
6  Beverly Hills, CA 90210
7  Tel: (866) 276-7637
   Fax: (310) 510-6429
8

9  *Attorneys for Plaintiff and the Proposed Class*

10

11                **UNITED STATES DISTRICT COURT**

12                **EASTERN DISTRICT OF CALIFORNIA**

13  ESTHER HICKS, individually, and        Case No.
    on behalf of all others similarly
14  situated,                              **CLASS ACTION COMPLAINT**

15              Plaintiff,
                                           JURY TRIAL DEMANDED
16
         v.
17

18  BEIERSDORF, INC, a Delaware
    corporation,
19

20              Defendant.

21

22

23

24

25

26

27

28

CROSNER LEGAL, P.C.

Plaintiff Esther Hicks ("Plaintiff") individually, and on behalf of all others similarly situated, and the general public, by and through undersigned counsel, hereby brings this action against Defendant Beiersdorf, Inc. ("Defendant" or "Beiersdorf"), and upon information and belief and investigation of counsel, alleges as follows:

### NATURE OF THE ACTION

1.      Defendant manufactures and sells two ointments directed to infants and children, the Aquaphor® Baby Healing Ointment and Aquaphor® Children's Healing Ointment (the "Products"). On the front of each Product package Defendant prominently states the Products are "Hypoallergenic."

2.      The packaging also states the Products are "Healing Ointments" that treat and/or relieve skin damaged by diaper rash and skin that is chafed, chapped, cracked or has a minor, cut, scrape or burn.

3.      The statement that the Products are "Hypoallergenic" is not true. The Products contain lanolin alcohol, a common allergen among infants and children. Lanolin was named contact allergen of the year in 2023, by the American Contact Dermatitis Society ("ACDS").

4.      Lanolin is not recommended for use on infants under two and is not recommended for use by those with damaged skin because both increase the chance of users developing an allergic reaction, including allergic contact dermatitis ("ACD") that can cause skin to become red, itchy, dry, cracked, scaly, blistered, swollen, burning or tender.

5.      Defendant's packaging, labeling, and advertising scheme is intended to give consumers the impression they are buying a premium product that is hypoallergenic.

6.      Defendant uses the "hypoallergenic" branding strategy and labeling as the primary feature differentiating the Products from other similar products in the marketplace.

1

CLASS ACTION COMPLAINT

CROSNER LEGAL, P.C.

7. Plaintiff purchased each of the Products separately at a local retailer during the limitations period for her two children, a newborn and young daughter.

8. At the time of purchase, Plaintiff believed that a hypoallergenic product is less likely to cause an allergic response because it is formulated to minimize the presence of common allergens. Plaintiff understood the term "Hypoallergenic" as used by Defendant to mean the Products did not contain an ingredient that is a common allergen to infants and children and that is not recommended for use in children under two or in those with damaged skin.

9. Plaintiff used the Aquaphor Baby healing ointment on her infant daughter for several months for a persistent rash, including in the diaper area, with no improvement. After discontinuing Aquaphor the rash improved significantly.

10. Plaintiff was deceived by Defendant's unlawful and deceptive conduct and brings this action individually and on behalf of a California Class of consumers for violations of the California Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750, *et seq*. and Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, *et seq*., and a Multi-State Class for breach of express warranty.

## JURISDICTION AND VENUE

11. This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because this is a class action in which: (1) there are over 100 members in the proposed class; (2) members of the proposed class have a different citizenship from Defendant; and (3) the claims of the proposed class members exceed $5,000,000 in the aggregate, exclusive of interest and costs.

12. This Court has personal jurisdiction over Defendant because Defendant conducts and transacts business in the State of California, contracts to supply goods within the State of California, and supplies goods within the State of California. Defendant, on its own and through its agents, is responsible for the formulation, ingredients, manufacturing, labeling, marketing, and sale of the

2

Products in California, specifically in this District. The marketing of the Products, including the decision of what to include and not include on the label and packaging, emanates from Defendant. Thus, Defendant intentionally availed itself of the markets within California through its advertising, marketing, and sale of the Products to consumers in California, including Plaintiff.

13.    The Court also has specific jurisdiction over Defendant as it has purposefully directed activities towards the forum state, Plaintiff's claims arise out of those activities, and it is reasonable for Defendant to defend this lawsuit because it has sold the Products in California. By distributing and selling the Products in California, Defendant has intentionally expressly aimed conduct at California which caused harm to Plaintiff and the Class which Defendant knows is likely to be suffered by Californians.

14.    Venue is proper in this District pursuant to 28 U.S.C. §1391(b) because Defendant engages in continuous and systematic business activities within the State of California. Venue is further proper pursuant to 28 U.S.C. §1391(b) because a substantial part of the events or omissions giving rise to the claim occurred in this District because Plaintiff purchased the Products within this District.  Venue is also proper in this District pursuant to Cal. Code Civ. Proc. § 395.5 because Defendant is doing business in this District, and the Products at issue were purchased in this District.

**PARTIES**

15.    Defendant, Beiersdorf, Inc., is a Delaware corporation with a principal place of business at 301 Tresser Boulevard, Suite 1500, Stamford, Connecticut 06901. During the applicable statute of limitations period, Defendant manufactured, imported, labeled, distributed, sold and/or marketed the Products throughout the United States, including this District.

16.    Plaintiff is a resident of Fresno, California. Plaintiff purchased both Products during the class period from a local Target or Walmart in 2024 or 2025.

CROSNER LEGAL, P.C.

3

The Products were purchased for personal, family, or household use.

17.    Prior to purchasing the Product Plaintiff read and relied on the representation made on the front of each Product that they are "Hypoallergenic" and are a "Healing Ointment." Plaintiff tries to purchase hypoallergenic products for her two young children to avoid common allergens and skin irritants.

18.    Plaintiff understood the representation that the Products were "Hypoallergenic" to mean they were less likely to cause an allergic response because they were formulated to minimize the presence of common allergens. This included an understanding that the Products did not contain an ingredient that is a common allergen to infants and children and that is not recommended for use in children under two or in those with damaged skin.

19.    Plaintiff paid more for the Products than she would have had she known the representations and omissions were false and misleading or would not have purchased the Products. The value of the Products Plaintiff purchased were materially less than their value as represented by Defendant.

20.    As a result, Plaintiff suffered injury in fact when she spent money to purchase the Products she would not have purchased or would have paid less for absent Defendant's misconduct.

21.    Plaintiff would like to, and would, purchase the Products again if they conform to the representations on the Products' packaging meaning they are actually hypoallergenic or if they are reformulated to remove ingredients that are common contact allergens to infants and children, including lanolin alcohol.

### FACTUAL ALLEGATIONS

#### THE AQUAPHOR PRODUCTS

22.    Aquaphor is a brand of over-the-counter ("OTC") skin care ointments manufactured by Beiersdorf Inc., an affiliate of Beiersdorf AG.

23.    Aquaphor has been available in the United States for over 90 years.

24.    Defendant sells a number of products under the Aquaphor brand

4

CROSNER LEGAL, P.C.

including Aquaphor® Baby Healing Ointment and Aquaphor® Children's Healing Ointment.

25.    The Products are sold in different sizes and throughout the United States and California at retailers such as Walmart, Target and online.

26.    The front label of the Products state they are "Hypoallergenic."[1]

27.    This representation is not true because the Products contain lanolin alcohol, a common allergen among infants and children.

28.    Lanolin was named allergen of the year in 2023, by the American Contact Dermatitis Society.[2] The ACDS includes 2,500 health care professionals in the field of allergic contact dermatitis and related inflammatory skin diseases with a goal of advancing the care and understanding of dermatitis and allergy.[3]

**CONSUMER DEMAND FOR HYPOALLERGENIC PRODUCTS**

29.    In 2024, the sensitive skin care market was estimated at $42 billion and is expected to grow to $61.48 billion by 2034.[4]

30.    According to Grand View Research, a market research and consulting company, this market growth is attributed to a significant rise in consumer awareness regarding skin sensitivities and the importance of using gentle and hypoallergenic products.[5]

31.    Consumers are increasingly seeking products with cleaner ingredient lists, free from harsh chemicals, fragrances, and artificial additives that can trigger

---

[1] https://www.aquaphorus.com/products/aquaphor/aquaphor-baby-healing-ointment-14oz and https://www.aquaphorus.com/products/aquaphor/aquaphor-childrens-healing-ointment-14oz.
[2] Nagorka, Carrie, *Lanolin Named Allergen of the Year*, Dermatology Times (March 27, 2023), *available at* https://www.dermatologytimes.com/view/lanolin-named-allergen-of-the-year.
[3] American Contact Dermatitis Society (ACDS), *Mission and Values*, *available at* https://www.contactderm.org/about-acds/mission-and-values.
[4] Nandi, Pradeep, *Global Sensitive Skin Care Product Market Overview*, Market Research Overview (Sept. 2024), *available at* https://www.marketresearchfuture.com/reports/sensitive-skin-care-product-market-25610.
[5] Grand View Research, *Sensitive Skin Care Products Market Size, Share & Trends Analysis Report*, Horizon Databook, *available at* https://www.grandviewresearch.com/industry-analysis/sensitive-skin-care-products-market-report#:~:text=.

1  adverse reactions.[6]

2      32.    A primary driver of the sensitive skin care market is the increasing

3  prevalence of sensitive skin conditions. Sensitive skin is characterized by a

4  weakened skin barrier, which makes it more susceptible to irritation and

5  inflammation.[7]

6      33.    Likewise, there is increasing demand for hypoallergenic baby care

7  products as parents become more health conscious and concerned about the safety

8  of products for babies.[8]

9      34.    Indeed, the baby skin care market is growing and is anticipated to

10  reach $22 billion by 2034.

11      35.    According to Transparency Market Research Inc., a market

12  intelligence company, "[p]arents are increasingly prioritizing quality and safety

13  when purchasing baby care products, driven by concerns over the harmful effects

14  of synthetic chemicals on delicate baby skin. This has led to a growing preference

15  for natural, organic, and hypoallergenic formulations."[9] It acknowledged that

16  "[p]arents are willing to pay a premium for products that promise safety and

17  efficacy, especially for babies with sensitive or allergy-prone skin."[10]

18      36.    The above factors have resulted in a strong consumer demand for

19  products that are "hypoallergenic" and free of common allergens.

20  / / /

21  / / /

22

23  [6] Mathews, Ken,  *Global Sensitive Skin Care Products Market– Global Industry Size, Share, Trends, Competition, Opportunity, and Forecast, 2018-2028F*, *available at* https://www.techsciresearch.com/news/10590-sensitive-skin-care-products-market.html.

24  [7] Nandi, Pradeep, *supra* note 4.

25  [8]  *Baby Care Market Projected to Flourish* (October 17, 2023), *available at* https://www.beautypackaging.com/contents/view_breaking-news/2023-10-17/baby-care-market-projected-to-flourish/.

26  [9] *Baby Skincare Market Set to Grow 6.1% Annually, Driven by Surging Demand for Organic and Chemical-Free Products by 2034*, Transparency Market Research (Jan. 20, 2025), *available*

27  *at*        https://www.globenewswire.com/news-release/2025/01/20/3012178/32656/en/Baby-Skincare-Market-S.

28  [10] *Id*.

CLASS ACTION COMPLAINT

CROSNER LEGAL, P.C.

1

2

**DEFENDANT CAPITALIZES ON THIS TREND BY MARKETING THE PRODUCTS AS "HYPOALLERGENIC"**

37.    Recognizing this trend and to appeal to the growing market of consumers seeking products that are formulated for sensitive skin and are hypoallergenic, Defendant labels the Products as "Hypoallergenic." This appears on the front label of every jar of the Products.

38.    A picture of the front of the Aquaphor® Baby Healing Ointment from Defendant's website is below (red box added):[11]



39.    The ingredients for this Product as shown on Defendant's website are below.[12]

**All Ingredients**

**Active Ingredients:** Petrolatum (41%)

**Inactive Ingredients:** Mineral Oil, Ceresin, Lanolin Alcohol, Panthenol, Glycerin, Bisabolol

---

[11] *Supra* note 1.
[12] *Id.*

CLASS ACTION COMPLAINT

CROSNER LEGAL. P.C.

40.    A picture of the front of the Aquaphor® Children's Healing Ointment from Defendant's website is below (red box added):[13]



41.    The ingredients for this Product as shown on Defendant's website are below.[14]



**All Ingredients**

**Active Ingredients:** Petrolatum (41%)

**Inactive Ingredients:** Mineral Oil, Ceresin, Lanolin Alcohol, Panthenol, Glycerin, Bisabolol

42.    The Products are sold at a premium compared to similar products. Walmart sells 14 ounces of Aquaphor® Baby Healing Ointment for $18.37[15] and 14 ounces of the Aquaphor® Children's Healing Ointment for $14.97.[16]

/ / /

/ / /

---

[13]*Id.*
[14]*Id.*
[15]https://www.walmart.com/ip/Aquaphor-Baby-Advanced-Therapy-Healing-Ointment-Skin-Protectant-14-oz/44997847?classType=VARIANT&athbdg=L1103&adsRedirect=true    (last visited September 3, 2025).
[16] https://www.walmart.com/ip/Aquaphor-Children-s-Healing-Ointment-Skin-Protectant-14oz-Jar/1612392187?classType=REGULAR&athbdg=L1300&from=/search    (last    visited September 3, 2025).

CLASS ACTION COMPLAINT

CROSNER LEGAL. P.C.

43.     By comparison, Walmart sells 13 ounces of Vaseline Baby Healing Petroleum Jelly, a comparable product, for $5.48.[17] It sells 13 ounces of Vaseline Original Healing Petroleum Jelly, a comparable product, for $5.48.[18]

**DEFENDANT'S HYPOALLERGENIC CLAIM IS MISLEADING**

*MEANING OF HYPOALLERGENIC*

44.     The FDA advises there are no Federal standards or definitions that govern the use of the term "hypoallergenic" rather "[t]he term means whatever a particular company wants it to mean."[19]

45.     The FDA, however, describes "hypoallergenic" to mean "products that manufacturers claim produce fewer allergic reactions than other cosmetic products."[20]

46.     Similarly, Dictionary.com defines hypoallergenic as "designed to reduce or minimize the possibility of an allergic response, as by containing relatively few or no potentially irritating substances."[21]

47.     Merriam-Webster defines hypoallergenic as "having little likelihood of causing an allergic response."[22]

48.     Thus, Plaintiff believed, as would reasonable consumers, that a hypoallergenic product is less likely to cause an allergic response because it is formulated to minimize the presence of common allergens. Plaintiff and Class members reasonably believed that "Hypoallergenic" as used by Defendant meant the Products did not contain an ingredient that is a common allergen to infants and children, and did not contain an ingredient that is not recommended for use

---

[17] https://www.walmart.com/ip/Vaseline-Hypoallergenic-Baby-Oil-Diaper-Rash-Cream-Healing-Petroleum-Jelly-13-oz/10533021? (last visited September 3, 2025).
[18] https://www.walmart.com/ip/Vaseline-Original-Lock-In-Moisture-Body-Oil-Pure-Healing-Petroleum-Jelly-All-Skin-13%20oz/10898766? (last visited September 3, 2025).
[19] U.S. FDA, *"Hypoallergenic" Cosmetics* (Feb. 25, 2022), *available at* https://www.fda.gov/cosmetics/cosmetics-labeling-claims/hypoallergenic-cosmetics#:~:text=Hypoallergenic.
[20] *Id.*
[21] https://www.dictionary.com/browse/hypoallergenic.
[22] https://www.merriam-webster.com/dictionary/hypoallergenic.

on children under two or in those with damaged skin.

49.    The FDA acknowledges that "[c]onsumers with hypersensitive skin, and even those with 'normal' skin, may be led to believe that [] [hypoallergenic] products will be gentler to their skin than non-hypoallergenic cosmetics."[23] It explains, "[f]or many years, companies have been producing products which they claim are 'hypoallergenic' or 'safe for sensitive skin' or 'allergy tested.' These statements imply that the products making the claims are less likely to cause allergic reactions than competing products. . . ."[24]

50.    The FDA also acknowledges that "[t]he term 'hypoallergenic' may have considerable market value in promoting cosmetic products to consumers on a retail basis[.]"[25]

51.    Reasonable consumers will not have the time, ability or knowledge to scrutinize each ingredient in Defendant's Products at the point-of-sale when deciding to purchase the Products based on Defendant's deceptive and misleading claim that they are "Hypoallergenic."

52.    Even if consumers scrutinized Defendant's ingredient list, a reasonable consumer would not know that lanolin alcohol is a common allergen in infants and children, particularly those with damaged skin to whom the Products are marketed, and thus products containing lanolin alcohol are not hypoallergenic for this group. This would require investigation beyond the grocery store and knowledge of chemistry and biology beyond that of the average reasonable consumer. Reasonable consumers must and do rely on companies like Defendant to honestly report the nature of a product's ingredients.

/ / /

/ / /

_____

[23] U.S. FDA, *"Hypoallergenic" Cosmetics, supra* note 19.
[24] *Id.*
[25] *Id.*

CLASS ACTION COMPLAINT

CROSNER LEGAL, P.C.

**THE PRODUCTS ARE NOT HYPOALLERGENIC**

53.    Lanolin is a waxy substance obtained from the fleece of sheep and is used in a variety of topical therapeutic and cosmetic preparations.

54.    In 2023, the American Contact Dermatitis Society named lanolin as the "Contact Allergen of the Year."[26]

55.    The American Contact Dermatitis Society is comprised of over 2,500 health care professionals in the field of allergic contact dermatitis and related inflammatory skin diseases. It is committed to advancing the care and understanding of dermatitis and allergy.[27]

56.    The allergenic components in lanolin are mainly the free lanolin alcohols.[28]

57.    It is generally recognized that to be hypoallergenic lanolin should contain less than 3% to as low as 1.5% of free lanolin alcohol, the primary allergenic fraction of lanolin.[29] Based on information and belief, the Products contain more than 3 percent lanolin alcohol.[30]

---

[26] Nagorka, Carrie, *supra* note 2.

[27] ACDS, *Mission and Values*, *supra* note 3.

[28] *Amended Safety Assessment of Lanolin and Lanolin-Derived Ingredients as Used in Cosmetics*, *Final Amended Report*, Cosmetic Ingredient Review ("CIR") at p.5 (Nov. 21, 2024), *available at* https://www.cir-safety.org/sites/default/files/FAR_Lanolin_092024.pdf.

[29] *See, e.g.*, Bourdillon, Katie, *et al.*, *Multi-residue analysis of certain lanolin nipplecare products for trace contaminants*, 17 BMC Chemistry 8 (2023) at p.2 (recognizing that "a lanolin with <1.5% FLA [free lanolin alcohol] may be considered truly hypoallergenic"), *available at* https://link.springer.com/article/10.1186/s13065-023-00919-0; CIR *Amended Safety Assessment of Lanolin and Lanolin-Derived Ingredients*, *supra* note 28 at p.5 (in medical grade lanolin the free Lanolin Alcohol content is reduced to less than 3% and in highly-purified anhydrous (HPA), free lanolin alcohol content is reported to be less than 1.5%).

[30] Draelos, Zoe D., *et al. The Low Prevalence of Allergic Contact Dermatitis Using a Petrolatum Ointment Containing Lanolin Alcohol*, 18 J. Drugs Dermatol. 10 (Oct. 2019) at pp.1002-1004 ("in Europe, a compounding base is commercially available containing 6% Eucerit® (same LA [Lanolin Alcohol] as AHO [Aquaphor Healing Ointment])"), *available at* https://jddonline.com/articles/the-low-prevalence-of-allergic-contact-dermatitis-using-a-petrolatum-ointment-containing-lanolin-alc-S1545961619P1002X/.

11

CROSNER LEGAL. P.C.

58.   Lanolin, including lanolin alcohol is recognized as a common allergen among infants and children, and a common cause of allergic contact dermatitis among this group.[31]

59.   Symptoms of ACD include red, itchy, dry, cracked, scaly, blistered, swollen, burning or tender skin.[32]

60.   Infant skin is particularly vulnerable because it is still developing through the first years of life and has a less mature barrier function allowing for increased absorption of external substances.[33] "[I]t is only at the age of puberty that it acquires the thickness and trophism typical of adult skin."[34]

---

[31] Neale, Holly, BS, *et al.*, *Pediatric allergic contact dermatitis. Part I: Clinical features and common contact allergens in children*, 84 Journal of the American Academy of Dermatology 2 at pp.235-244 (Feb. 2021), *available at* https://www.jaad.org/article/S0190-9622(20)32910-8/fulltext; Mowad, Christen, M.D., *et al.*, *The Wolly Culprit: Lanolin Revealed as an Uncommon Cause of Dermatitis on Normal Skin*, American Academy of Dermatology Association (Jan. 16, 2024), *available at* https://www.medpagetoday.com/reading-room/aad/general-dermatology/108253; Silverberg, Jonathan I., *et al.*, *Lanolin Allergic Reactions: North American Contact Dermatitis Group Experience, 2001 to 2018*, 33 Dermatitis 3 (June 1, 2022) (abstract) (retrospective analysis recognizing "Lanolin is an important cause of allergic contact dermatitis" and "Allergic reactions to lanolin were more common in children (4.5%) than in adults (3.2%, P = 0.0018)" out of the 1,431 patch tested patients), *available at* https://www.liebertpub.com/doi/10.1097/DER.0000000000000871.
[32] *Contact Dermatitis: Facts About Skin Rashes*, WebMD, *available at* https://www.webmd.com/skin-problems-and-treatments/contact-dermatitis.
[33] Dumycz, Karolina, *et al.*, Letter to the Editor, *Cosmetics for neonates and infants: haptens in products' composition*, 9 Clinical and Translational Allergy 1 (March 8, 2019) ("The skin of neonates and infants, [], is considered as physiologically fragile with diminished ability to respond to adverse environmental factors [] Development of the skin structure and function continues at least until the end of the first year" and identifying lanolin alcohol as one of the most common haptens in infant cosmetic products), *available at* https://onlinelibrary.wiley.com/doi/full/10.1186/s13601-019-0257-8; Stamatas, G.N., *et al*, *Infant skin physiology and development during the first years of life: a review of recent findings based on in vivo studies*, 33 International Journal of Cosmetic Science 1 (Feb. 2011) ("infant skin appears to have thinner epidermis and stratum corneum (SC) as well as smaller corneocytes at least until the second year of life" and "compared to adult skin it [infant skin] seems to be more prone to develop certain pathological conditions, such as atopic dermatitis and irritant contact dermatitis") *available at* https://onlinelibrary.wiley.com/doi/full/10.1111/j.1468-2494.2010.00611.x; Rahma, Annisa, *et al.*, *Skin Barrier Function in Infants: Update and Outlook*, 14 Pharmaceuticals 2 at p.433 (Feb. 17, 2022), *available at* https://www.mdpi.com/1999-4923/14/2/433.
[34] Pigatto, Paolo, *et al.*, *Contact dermatitis in children*, 36 Italian Journal of Pediatrics 2 (Jan. 13, 2010), *available at* https://ijponline.biomedcentral.com/articles/10.1186/1824-7288-36-2#Sec1.

61. At least one study observes, lanolin should not be used in children under two: "[l]anolin, despite the evident moisturizing quality, displays a considerable risk of development of ACD and is also not recommended to be used in children before the age of two."[35]

62. A 2021 study found the estimated prevalence of pediatric ACD was 16.5%, affecting 4.4 million children in the United States and although the prevalence of pediatric ACD was increasing, cases remained underreported.[36]

63. Not only is lanolin not recommended for use on children under two due to their immature skin barrier, a lanolin paradox recognizes it should not be used on damaged skin.[37]

64. The "lanolin paradox" recognizes that lanolin "can, in the same person, both protect and damage the skin, depending on the condition of the skin to which the cosmetic or medicine containing lanolin is applied."[38]

65. The lanolin paradox is based on four principles: (1) lanolin-containing topical medicaments tend to be more sensitizing than lanolin-containing cosmetics; (2) patients with ACD after applying lanolin-containing topical medicaments to damaged or ulcerated skin often can apply lanolin-containing cosmetics to normal or unaffected skin without a reaction; (3) false-negative patch test results often occur in lanolin-sensitive patients; and (4) patch testing with a single lanolin-containing agent (lanolin alcohol [30% in

---

[35] Ryczaj, Klaudia, *et al.*, *Contact allergens in moisturizers in preventative emollient therapy – A systematic review*, 12 Clin Transl Allergy 6 (June 5, 2022), *available at* https://pmc.ncbi.nlm.nih.gov/articles/PMC9168229/; Wollenberg, A., *et al.*, *Consensus-based European guidelines for treatment of atopic eczema (atopic dermatitis) in adults and children: part I*, 32 Journal of the European Academy of Dermatology and Venerology 5 at pp.657-682 (May 2018), *available at* https://onlinelibrary.wiley.com/doi/full/10.1111/jdv.14891.

[36] *See* Neale, *Pediatric allergic contact dermatitis, supra* note 31.

[37] Jenkins, Blair A., *et al.*, *Lanolin*, 34 Dermatitis 1 at pp.4-12 (Jan-Feb 2023), *available at* https://pubmed.ncbi.nlm.nih.gov/36917502/#:~:text=Although%20lanolin%20is%0a%20weak,Allergens (abstract); CIR *Amended Safety Assessment of Lanolin, supra* note 28 at p.11.

[38] Lis, Kinga, *Hypersensitivity to Lanolin: An Old–New Problem*, 14 Life 1553 (2024), *available at* https://www.mdpi.com/2075-1729/14/12/1553.

petrolatum]) can generate false results (positive and negative).[39]

66.    At least one study comments, "[t]hese paradoxical properties of lanolin mean that it is not recommended for use on damaged skin, while, at the same time, it is considered useful for preventive skin care, helping to keep it in good condition."[40]

67.    This is because healthy skin with a normal tissue structure is a sufficient barrier for this allergen, but in the case of mechanically or inflammatorily damaged skin, lanolin penetrates deeply enough to trigger an immune system response, manifesting as ACD.[41]

68.    Indeed, "[l]anolin easily absorbs through the skin and facilitates the absorption of medicinal chemicals when used as an ointment."[42]

69.    Allergic reactions to lanolin are observed in patients with certain skin conditions, including perianal/genital dermatitis.[43]

70.    Perianal and genital dermatitis are forms of diaper rash, an inflammation of the skin in the diaper area. Diaper rash is any rash that affects a baby's diaper area — buttocks, genitals or thighs.[44]

71.    The Mayo Clinic describes "[d]iaper rash [a]s a form of dermatitis that looks like patches of inflamed skin on the buttocks, thighs and genitals."[45]

---

[39] Hadley Johnson, BS, *Lanolin: The 2023 American Contact Dermatitis Society Allergen of the Year*, CUTIS at p.79 (2023) (describing the lanolin paradox), *available at* https://cdn.mdedge.com/files/s3fs-public/CT112002078.pdf.
[40] *See* Lis, Kinga, *Hypersensitivity to Lanolin: An Old–New Problem*, *supra* note 38.
[41] *Id.*
[42] Zirwas, Matthew J. and Sarah A. Stechschulte, *Moisturizer Allergy, Diagnosis and Management*, 1 Journal of Clinical and Aesthetic Dermatology 4 at pp.38-44 (Nov. 2008), available at https://pmc.ncbi.nlm.nih.gov/articles/PMC3016930/.
[43] CIR *Amended Safety Assessment of Lanolin, supra* note 28 at p.13; Mowad, MD, *The Wolly Culprit: Lanolin Revealed as an Uncommon Cause of Dermatitis on Normal Skin, supra note* 31; *[Draft] Amended Safety Assessment of Lanolin-Derived Ingredients as Used in Cosmetics,* Cosmetic Ingredient Review at pp.13, 25, 27 (March 4, 2024), *available at* https://www.cir-safety.org/sites/default/files/Lanolin_0.pdf.
[44] *Diaper Rash (Diaper Dermatitis)*, *available at* https://my.clevelandclinic.org/health/diseases/11037-diaper-rash-diaper-dermatitis.
[45] https://www.mayoclinic.org/diseases-conditions/diaper-rash/symptoms-causes/syc-20371636.

CLASS ACTION COMPLAINT

72.    According to the Cleveland Clinic, diaper rash is the most common skin condition in young infants and more than half of babies between 4 and 15 months of age will experience diaper rash at least once in a two-month period.[46]

73.    The Aquaphor® Baby Healing Ointment is intended to be used on infants to treat skin damaged by diaper rash.

74.    The front of the Aquaphor® Baby Healing Ointment Product represents that it is a "Healing Ointment" "For dry, chapped or irritated skin."

75.    The back of the Product indicates that it is for the "Treatment or prevention of diaper rash" and "protects chafed skin associated with diaper rash":



76.    Likewise, the Aquaphor® Children's Healing Ointment is intended to be used for children to relieve or heal damaged skin.

77.    The front of the Product represents that it is a "Healing Ointment" "For dry, chapped, or irritated skin."

78.    The back of the Product indicates that it "temporarily protects and helps relieve chapped or cracked skin and lips" and to temporarily protect minor "cuts," scrapes," and "burns":

---

[46]*See supra* note 44.

CROSNER LEGAL, P.C.



79. Thus, the Aquaphor® Baby Healing Ointment is marketed for use by infants with inflamed or damaged skin associated with diaper rash. The Aquaphor® Children's Healing Ointment is marketed to help children relieve damaged skin that is chapped, cracked or has a minor cut, scrape or burn.

80. Lanolin, a common allergen for infants and children, that is not recommended for use on children under two because of their immature skin barrier, and that is also not recommended for use by those with damaged skin (e.g., skin that is chapped, cracked, diaper rash), is not hypoallergenic.[47]

81. Alternatives exist; for instance, petroleum jelly or Vaseline, that does not contain lanolin, is recognized as a safe and inexpensive substitute with equivalent moisturizing efficacy and essentially no risk for ACD.[48]

**REASONABLE CONSUMERS ARE DECEIVED BY DEFENDANT'S MISREPRESENTATION AND OMISSION**

82. Marketing the Products as "Hypoallergenic" and a "Healing Ointment" is misleading to reasonable consumers because they contain lanolin alcohol a common allergen among infants and children and those with damaged and sensitive skin.

---

[47] Nguyen, Josephine MD, *et al.*, *Allergic contact dermatitis caused by lanolin (wool) alcohol contained in an emollient in three postsurgical patients*, 62 Journal of the American Academy of Dermatology 6 at pp.1064-1065 (June 2010) (observing lanolin allergic contact dermatitis in 3 postsurgical patients following application of Aquaphor Healing Ointment), *available at* https://www.jaad.org/article/S0190-9622(09)01349-8/fulltext.

[48] Hadley Johnson, BS, *Lanolin: The 2023 American Contact Dermatitis Society Allergen of the Year*, *supra* note 39 at 80.

CLASS ACTION COMPLAINT

83.    When purchasing the Products, Plaintiff sought products that were hypoallergenic for her newborn and young child as represented by Defendant on the front label of the Products.

84.    Plaintiff read and relied on Defendant's false and misleading claim that the Products are "Hypoallergenic" and are a "Healing Ointment".

85.    Reasonable consumers, including Plaintiff, viewing the Products' labels, which represent they are "Hypoallergenic" and are a "Healing Ointment" to help treat or relieve damaged skin expect the Products will not contain a common allergen, one that is not recommended for the age group to which the Products are marketed, and which is not recommended for use by those with damaged skin, also to whom the Products are marketed.

86.    Lanolin is not recommended for use by children under two because of their immature skin barrier increasing their chance of developing ACD from this common contact allergen. Nor is it recommended for use by those with damaged skin, such as skin that is chapped, cracked, or has diaper rash.

**PLAINTIFF AND PUTATIVE CLASS MEMBERS SUFFERED ECONOMIC INJURY**

87.    Plaintiff and putative Class members suffered economic injury as a result of Defendant's actions. Plaintiff and putative Class members spent money that, absent Defendant's actions, they would not have spent.

88.    Plaintiff and Class members would not have purchased or would have paid less for the Products if they knew that lanolin was a recognized contact allergen among infants and children and is not recommended to be used in children under two or on damaged skin.

89.    The Products were worth less than what Plaintiff paid, and she would not have paid as much absent Defendant's false and misleading statements and omissions.

90.    The Products are sold at a premium compared to similar products such as Vaseline.[49]

91.    Plaintiff would like to, and would, purchase the Products again if they conform to the representations on the Products' packaging meaning they are actually hypoallergenic or if they are reformulated to remove ingredients that are common contact allergens to infants and children, including lanolin alcohol. However, as a result of Defendant's ongoing misrepresentations and omissions, Plaintiff is unable to rely on the Products' labeling when deciding in the future whether to purchase not only the Products, but any similar Aquaphor products labeled as hypoallergenic.

92.    Accordingly, Plaintiff brings this action individually and on behalf of other similarly situated consumers to halt the dissemination of Defendant's deceptive advertising message, correct the deceptive perception it has created in the minds of consumers, and obtain redress for those who have purchased the Products.

93.    As a consequence of Defendant's deceptive labeling and material omissions, Plaintiff alleges Defendant has violated and is violating the CLRA, UCL, and has breached express warranties.

**NO ADEQUATE REMEDY AT LAW**

94.    Plaintiff and members of the Class are entitled to equitable relief as no adequate remedy at law exists. The statutes of limitations for the causes of action pled herein vary. Class members who purchased the Products more than three years prior to the filing of the Complaint will be barred from recovery if equitable relief were not permitted under the UCL.

95.    The scope of actionable misconduct under the unfair prong of the UCL is broader than the other causes of action asserted herein. It includes

[49]*Supra* notes 15-18.

CROSNER LEGAL, P.C.

Defendant's overall unfair marketing scheme to promote and brand the Products, across a multitude of media platforms, including the Products' label, packaging, and online descriptions, over a long period of time, in order to gain an unfair advantage over competitor products. Plaintiff and Class members may also be entitled to restitution under the UCL, while not entitled to damages under other causes of action asserted herein (e.g., the CLRA is limited to certain types of plaintiffs (an individual who seeks or acquires, by purchase or lease, any goods or services for personal, family, or household purposes) and other statutorily enumerated conduct).

96.    Injunctive relief is appropriate on behalf of Plaintiff and members of the Class because Defendant continues to misrepresent the Products as being "Hypoallergenic" and a "Healing Ointment" despite that they contain lanolin alcohol a common contact allergen among infants and children that is not recommended for children under two or those with damaged skin.

97.    Injunctive relief is necessary to prevent Defendant from continuing to engage in the unfair, fraudulent, and/or unlawful conduct described herein and to prevent future harm—none of which can be achieved through available legal remedies (such as monetary damages to compensate past harm). Further, a public injunction is available under the UCL, and damages will not adequately benefit the general public in a manner equivalent to an injunction.

## CLASS ACTION ALLEGATIONS

98.    Plaintiff brings this action as a class action pursuant to Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3) on behalf of herself and a California Class and Multi-State Class, defined as follows:

**The "California Class":**

All persons who purchased the Products for personal, household or family use in California, within the applicable statute of limitations, until the date class notice is disseminated.

CROSNER LEGAL. P.C.

**The "Multi-State Breach of Warranty Class":**

All persons who purchased the Products for personal, household or family use in states with express warranty laws that are substantially similar to California law,[50] within the applicable statute of limitations, until the date class notice is disseminated.

99.    The "California Class" and "Multi-State Breach of Warranty Class" are referred to together as the "Class." Excluded from the Class are: (i) Defendant and its officers, directors, and employees; (ii) any person who files a valid and timely request for exclusion; and (iii) judicial officers and their immediate family members and associated court staff assigned to the case.

100.    Plaintiff reserves the right to amend or otherwise alter the Class definition presented to the Court at the appropriate time, or to propose or eliminate subclasses, in response to facts learned through discovery, legal arguments advanced by Defendants, or otherwise.

101.    Certification of the Class is appropriate because Plaintiff can prove the elements of the claims on a classwide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

102.    <u>Numerosity</u>: Class members are so numerous that joinder of all members is impracticable. Plaintiff believes there are thousands of consumers who are Class members described above who have been damaged by Defendant's deceptive and misleading practices. For instance, on September 3, 2025, Walmart's website showed that the Aquaphor Baby Healing Ointment was in 50 plus people's carts. Below is a screenshot:[51]

---

[50] Plaintiff preliminarily asserts the following states have express warranty laws that are substantially similar to California's breach of express warranty law: Alaska, Arizona, Arkansas, Colorado, Connecticut, Delaware, District of Columbia, Georgia, Hawaii, Idaho, Illinois, Indiana, Kansas, Kentucky, Maine, Massachusetts, Minnesota, Mississippi, Missouri, Montana, Nebraska, Nevada, New Hampshire, New Jersey, New Mexico, New York, North Carolina, North Dakota, Ohio, Oklahoma, Oregon, Pennsylvania, Rhode Island, South Carolina, South Dakota, Tennessee, Texas, Utah, Vermont, Virginia, Washington, West Virginia, or Wyoming.
[51] *See supra* note 15.

In 50+ people's carts

Best seller

Visit the Aquaphor Store

**Aquaphor Baby Healing Ointment for Teething, Drool and Diaper Rash, Hypoallergenic, 14 oz**

★★★★★ (4.8)    |    1,951 ratings

103.    Similarly, on May 13, 2025, Walmart's website showed that 100 plus people had purchased the Aquaphor Children's Healing Ointment since the day before. Below is a screenshot:[52]

100+ bought since yesterday, try a subscription

Visit the Aquaphor Store

**Aquaphor Children's Healing Ointment for Dry, Chapped or Irritated Skin, Hypoallergenic, 14 oz**

★★★★☆ (4.7)    |    330 ratings

104.    <u>Commonality</u>: There is a well-defined community of interest in the common questions of law and fact affecting all Class members. The questions of law and fact common to the Class which predominate over any questions that may affect individual Class members include, but are not limited to:

a.    Whether Defendant is responsible for the conduct alleged herein which was uniformly directed at all consumers who purchased the Products;

b.    Whether Defendant's misconduct set forth in this Complaint demonstrates that Defendant engaged in unfair, fraudulent, or unlawful business practices with respect to the advertising, marketing, and sale of the Products;

c.    Whether Defendant made misrepresentations and/or failed to disclose material facts concerning the Products that were likely to deceive the public;

d.    Whether the representation that the Products are "Hypoallergenic" is false, deceptive, misleading, or unfair;

---

[52] *See supra* note 16.

e.    Whether Defendant committed a breach of express warranty in its labeling the Products "Hypoallergenic";

f.    Whether Plaintiff and the Class are entitled to injunctive relief;

g.    Whether Plaintiff and the Class are entitled to money damages and/or restitution under the same causes of action as the other Class members.

105.    Typicality: Plaintiff is a member of the Class she seeks to represent. Plaintiff's claims are typical of the claims of each Class member in that every member of the Class was susceptible to the same deceptive, misleading conduct and purchased one or more of the Products. Plaintiff is entitled to relief under the same causes of action as the other Class members.

106.    Adequacy: Plaintiff is an adequate Class representative because her interests do not conflict with the interests of the Class members she seeks to represent; the consumer fraud claims are common to all other members of the Class, and Plaintiff has a strong interest in vindicating the rights of the Class; Plaintiff has retained counsel competent and experienced in complex class action litigation and Plaintiff intends to vigorously prosecute this action. Plaintiff has no interests which conflict with those of the Class. The Class members' interests will be fairly and adequately protected by Plaintiff and proposed Class Counsel. Defendant has acted in a manner generally applicable to the Class, making relief appropriate with respect to Plaintiff and Class members. Prosecution of separate actions by individual Class members would create a risk of inconsistent and varying adjudications.

107.    The Class is properly brought and should be maintained as a class action because a class action is superior to traditional litigation of this controversy. A class action is superior to the other available methods for the fair and efficient adjudication of this controversy because:

a.    The joinder of thousands of individual Class members is impracticable, cumbersome, unduly burdensome, and a waste of judicial and/or

litigation resources;

b.     The individual claims of the Class members may be relatively modest compared with the expense of litigating the claim, thereby making it impracticable, unduly burdensome, and expensive to justify individual actions;

c.     When Defendant's liability has been adjudicated, all Class members' claims can be determined by the Court and administered efficiently in a manner far less burdensome and expensive than if it were attempted through filing, discovery, and trial of all individual cases;

d.     This class action will promote orderly, efficient, expeditious, and appropriate adjudication and administration of Class claims;

e.     Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action;

f.     This class action will assure uniformity of decisions among Class members;

g.     The Class is readily definable and prosecution of this action as a class action will eliminate the possibility of repetitious litigation; and

h.     Class members' interests in individually controlling the prosecution of separate actions is outweighed by their interest in efficient resolution by a single class action.

108.   <u>Final Declaratory or Injunctive Relief</u>: Additionally, or in the alternative, the Class also may be certified because Defendant has acted or refused to act on grounds generally applicable to the Class making final declaratory and/or injunctive relief with respect to the members of the Class as a whole, appropriate.

109.   Plaintiff seeks preliminary and permanent injunctive and equitable relief on behalf of the Class, on grounds generally applicable to the Class, to enjoin and prevent Defendant from engaging in the acts described, and to require Defendant to provide full restitution to Plaintiff and Class members.

110.   Unless the Class is certified, Defendant will retain monies that were taken from Plaintiff and the Class as a result of Defendant's wrongful conduct. Unless a classwide injunction is issued, Defendant will continue to commit the violations alleged and the Class and general public will continue to be misled.

**FIRST CLAIM FOR RELIEF**

**Violation of California's Consumers Legal Remedies Act**

**Cal. Civ. Code §§ 1750, *et seq.***

***(On Behalf of the California Class)***

111.   Plaintiff realleges and incorporates by reference all allegations contained in this Complaint, as though fully set forth herein.

112.   Plaintiff brings this claim under the CLRA individually and on behalf of the California Class against Defendant.

113.   At all times relevant hereto, Plaintiff and the members of the Class were "consumer[s]," as defined in California Civil Code section 1761(d) because they purchased the Products for personal, family, and household purposes.

114.   At all relevant times, Defendant was a "person," as defined in California Civil Code section 1761(c).

115.   At all relevant times, the Products manufactured, marketed, advertised, and sold by Defendant constituted "goods," as defined in California Civil Code section 1761(a).

116.   Purchases of the Products by Plaintiff and Class members were and are "transactions" within the meaning of California Civil Code section 1761(e).

117.   Defendant disseminated, or caused to be disseminated false and misleading representations, through its labeling and advertising. Defendant's representation that the Products are "Hypoallergenic" and a "Healing Ointment" which statements appear on the front label of the Products, is meant to and does convey the impression that the Products are intended for and safe to be used by infants and children with damaged skin. This is false and misleading because the

Products contain lanolin alcohol, a common contact allergen for infants and children. Lanolin was named Allergen of the Year by the ACDS in 2023. It is not recommended for use by children under two because of their immature skin barrier and is not recommended for use by those with damaged skin, such as skin that is chapped, cracked, or has diaper rash. In both cases - underdeveloped skin barrier in infants and damaged skin in infants and children – lanolin is able to penetrate the skin more deeply triggering an immune or allergic response and thus the Products are not hypoallergenic.

118.    This is a material misrepresentation and omission as a reasonable consumer would find the fact that the Products contain a common contact allergen (lanolin alcohol) to be material to their decision to purchase the Products. Defendant's representations violate the CLRA in the following ways:

>    (a) Defendant represented that the Products have characteristics, ingredients, uses, and benefits which they do not have (Cal. Civ. Code § 1770(a)(5));

>    (b) Defendant represented that the Products are of a particular standard, quality, or grade, which they are not (Cal. Civ. Code § 1770(a)(7));

>    (c) Defendant advertised the Products with an intent not to sell the Products as advertised (Cal. Civ. Code § 1770(a)(9)); and

>    (d) Defendant represented that the subject of a transaction has been supplied in accordance with a previous representation when it has not (Cal. Civ. Code § 1770(a)(16)).

119.    Defendant violated the CLRA because the Products were prominently labeled as being "Hypoallergenic" on the front of the package. This was false and misleading because the Products contain an ingredient (lanolin alcohol), that is not recommended for use in infants under two because of their immature skin barrier and is not recommended for use by those with damaged

CROSNER LEGAL, P.C.

25

skin because both instances increase the chance of users developing an allergic reaction by allowing lanolin to penetrate the skin more deeply. Defendant knew or should have known that this representation on the front of the Products' packages would mislead reasonable consumers.

120.   Defendant's actions as described herein were done with conscious disregard of Plaintiff's and the Class members' rights and were wanton and malicious.

121.   Defendant's wrongful business practices constituted, and constitute, a continuing course of conduct in violation of the CLRA, since Defendant is still representing that the Products have characteristics they do not have.

122.   Pursuant to California Civil Code section 1782(d), Plaintiff and the members of the California Class seek an order enjoining Defendant from engaging in the methods, acts, and practices alleged herein.

123.   Pursuant to California Civil Code section 1782, on or about May 19, 2025, Plaintiff notified Defendant, in writing, by certified mail, of the alleged violations of the CLRA and demanded that Defendant rectify the problems associated with the actions detailed above and give notice to all affected consumers of its intent to so act. Defendant has not rectified or agreed to rectify the problems associated with the actions detailed herein and give notice to all affected consumers within 30 days of the date of written notice pursuant to section 1782 of the CLRA. Thus, Plaintiff seeks actual damages, injunctive relief, and attorneys' fees and costs for Defendant's violations of the CLRA.

124.   Pursuant to section 1780(d) of the CLRA, below is an affidavit showing this action was commenced in a proper forum.

/ / /

/ / /

/ / /

/ / /

CROSNER LEGAL, P.C.

CROSNER LEGAL, P.C.

SECOND CLAIM FOR RELIEF

**Violation of California's Unfair Competition Law ("UCL")**

**Cal. Bus. & Prof. Code §§ 17200, *et seq.***

***(On Behalf of the California Class)***

125.    Plaintiff realleges and incorporates by reference all allegations contained in this Complaint, as though fully set forth herein.

126.    Plaintiff brings this claim under the UCL individually and on behalf of the California Class against Defendant.

127.    The UCL prohibits any "unlawful," "fraudulent," or "unfair" business act or practice and any false or misleading advertising.

128.    Defendant committed unlawful business acts or practices by making the representations and omitting material facts (which constitutes advertising within the meaning of Cal. Bus. & Prof. Code, § 17200), as set forth more fully herein, and by violating California's Consumers Legal Remedies Act, Cal. Civ. Code §§1750, *et seq*., California's False Advertising Law, Cal. Bus. & Prof. §§ 17500, *et seq*., 15 U.S.C. § 45, and by breaching express warranties. Plaintiff, individually and on behalf of the other Class members, reserves the right to allege other violations of law, which constitute other unlawful business acts or practices. Such conduct is ongoing and continues to this date.

129.    Defendant committed "unfair" business acts or practices by: (1) engaging in conduct where the utility of such conduct is outweighed by the harm to Plaintiff and the members of the Class; (2) engaging in conduct that is immoral, unethical, oppressive, unscrupulous, or substantially injurious to Plaintiff and the members of the Class; and (3) engaging in conduct that undermines or violates the intent of the consumer protection laws alleged herein. There is no societal benefit from deceptive advertising. Plaintiff and the other Class members paid for a Product that is not as advertised by Defendant. While Plaintiff and the other Class members were harmed, Defendant was unjustly enriched by its false

27

misrepresentations and material omissions. As a result, Defendant's conduct is "unfair," as it offended an established public policy. There were reasonably available alternatives to further Defendant's legitimate business interests, other than the conduct described herein.

130. Defendant committed "fraudulent" business acts or practices by making the representations of material fact regarding the Products as set forth herein. Defendant's business practices as alleged are "fraudulent" under the UCL because they are likely to deceive customers into believing the Products are hypoallergenic.

131. Defendants knowingly and intentionally represented that the Products are "Hypoallergenic" which, as described herein, is false and misleading.

132. Defendant also made a material false representation and omission by failing to disclose the truth about the Products, including that the Products are not "Hypoallergenic" because lanolin alcohol is a common contact allergen that is not recommended for use in infants under two because of their immature skin barrier and is not recommended for use by those with damaged skin because both increase the chance of users developing an allergic reaction such as ACD.

133. Plaintiff and the other members of the Class have in fact been deceived as a result of their reliance on Defendant's material representations and omissions. This reliance has caused harm to Plaintiff and the other members of the Class, each of whom purchased Defendant's Products. Plaintiff and the other Class members have suffered injury in fact and lost money as a result of purchasing the Products and Defendant's unlawful, unfair, and fraudulent practices.

134. Defendant's wrongful business practices and violations of the UCL are ongoing.

CROSNER LEGAL, P.C.

135.   Plaintiff and the Class seek pre-judgment interest as a direct and proximate result of Defendant's unfair and fraudulent business conduct. The amount on which interest is to be calculated is a sum certain and capable of calculation, and Plaintiff and the Class seek interest in an amount according to proof.

136.   Unless restrained and enjoined, Defendant will continue to engage in the above-described conduct. Accordingly, injunctive relief is appropriate. Pursuant to California Business & Professions Code § 17203, Plaintiff, individually and on behalf of the Class, seeks (1) restitution from Defendant of all money obtained from Plaintiff and the other Class members as a result of unfair competition; (2) an injunction prohibiting Defendant from continuing such practices in the State of California that do not comply with California law; and (3) all other relief this Court deems appropriate, consistent with California Business & Professions Code section 17203.

### THIRD CLAIM FOR RELIEF

### Breach of Express Warranty

### (On Behalf of the Multi-State Class and California Class)

137.   Plaintiff realleges and incorporates by reference all allegations contained in this Complaint, as though fully set forth herein.

138.   Plaintiff brings this claim for breach of express warranty individually and on behalf of each Class against Defendant.

139.   As the manufacturer, marketer, distributor, and seller of the Products, Defendant issued an express warranty by representing to consumers at the point of purchase, on the front of the Products' packages, that the Products are "Hypoallergenic."

140.   Plaintiff and the Class reasonably relied on Defendant's above misrepresentation, description and specification regarding the Products.

CROSNER LEGAL, P.C.

141.   Defendant's representation was part of the description of these goods and the bargain upon which the goods were offered for sale and purchased by Plaintiff and members of each Class.

142.   In fact, the Products do not conform to Defendant's representations because the Products contain a common contact allergen (lanolin alcohol), that is not recommended for use in infants under two because of their immature skin barrier and is not recommended for use by those with damaged skin because both increase the chance of users developing an allergic reaction, including ACD. By falsely representing that the Products are hypoallergenic Defendant breached express warranties.

143.   Plaintiff relied on Defendant's (the manufacturer's) representations on the Products' labels which provide the basis for an express warranty.

144.   As a direct and proximate result of Defendant's breach, Plaintiff and members of each Class were injured because they: (1) paid money for the Products that was not what Defendant represented; (2) were deprived of the benefit of the bargain because the Products they purchased were different than Defendant advertised; and (3) were deprived of the benefit of the bargain because the Products they purchased had less value than if Defendant's representation about the characteristics of the Products was truthful.

145.   Had Defendant not breached the express warranty by making the false representation alleged herein, Plaintiff and Class members would not have purchased the Products or would not have paid as much as they did for the Products.

146.   All conditions precedent to Defendant's liability under the above-referenced contract have been performed by Plaintiff and the other Class members. Defendant breached its express warranties about the Products, as alleged above. Defendant violated the following state warranty laws, which are substantially similar to California express warranty law: Alaska Stat. § 45.02.313;

A.R.S. § 47-2313; Ark. Code § 4-2-313; Cal. Com. Code § 2313; Colo. Rev. Stat. § 4-2-313; Conn. Gen. Stat. § 42a-2-313; 6 Del. C. § 2-313; D.C. Code § 28:2-313; Ga. Code § 11-2-313; HRS § 490:2- 313; Idaho Code § 28-2-313; 810 ILCS 5/2-313; Ind. Code § 26-1-2-313; K.S.A. § 84-2-313; KRS § 355.2-313; 11 M.R.S. § 2-313; Mass. Gen. Laws Ann. ch. 106 § 2-313; Minn. Stat. § 336.2-313; Miss. Code Ann. § 75-2-313; R.S. Mo. § 400.2-313; Mont. Code Anno. § 30-2-313; Neb. Rev. Stat. § 2- 313; Nev. Rev. Stat. Ann. § 104.2313; RSA 382-A:2-313; N.J. Stat. Ann. § 12A:2-313; N.M. Stat. Ann. § 55-2-313; N.Y. U.C.C. Law § 2-313; N.C. Gen. Stat. § 25-2-313; N.D. Cent. Code § 41-02-30; ORC Ann. § 1302.26; 12A Okl. St. § 2-313; Or. Rev. Stat. § 72-3130; 13 Pa. C.S. § 2313; R.I. Gen. Laws § 6A-2-313; S.C. Code Ann. § 36-2-313; S.D. Codified Laws, § 57A-2-313; Tenn. Code Ann. § 47-2-313; Tex. Bus. & Com. Code § 2.313; Utah Code Ann. § 70A-2-313; 9A V.S.A. § 2-313; Va. Code Ann. § 59.1-504.2; Wash. Rev. Code Ann. § 62A.2-313; W. Va. Code § 46- 2-313; and Wyo. Stat. § 34.1-2-31.

## PRAYER FOR RELIEF

Plaintiff, individually, and on behalf of all others similarly situated, requests for relief pursuant to each claim set forth in this Complaint, as follows:

a.    Declaring this action is a proper class action, certifying each Class as requested herein, designating Plaintiff as the class representative and appointing undersigned counsel as class counsel;

b.    Ordering restitution and disgorgement of all profits and unjust enrichment that Defendant obtained from Plaintiff and Class members as a result of Defendant's unlawful, unfair, and fraudulent business practices;

c.    Ordering injunctive relief as permitted by law or equity, including enjoining Defendant from continuing the unlawful practices as set forth herein, and ordering Defendant to engage in a corrective advertising campaign;

d.    Ordering damages in an amount which is different than that calculated for restitution for Plaintiff and each Class, including compensatory,

statutory and punitive damages;

e.      An order declaring Defendant's conduct violates the referenced statutes;

f.      Ordering Defendant to pay attorneys' fees and litigation costs to Plaintiff and the other members of each Class;

g.      Ordering Defendant to pay both pre- and post-judgment interest on any amounts awarded; and

h.      Ordering such other and further relief as may be just and proper.

<u>**JURY DEMAND**</u>

Plaintiff hereby demands a trial by jury of all claims in this Complaint so triable.

Dated: September 15, 2025              CROSNER LEGAL, P.C.

                                       By:      */s/ Jennifer L. MacPherson*
                                       JENNNIFER L. MACPHERSON

                                       Jennifer L. MacPherson (SBN 202021)
                                       *jmacpherson@crosnerlegal.com*
                                       Craig W. Straub (SBN 249032)
                                       *craig@crosnerlegal.com*
                                       Zachary M. Crosner (SBN 272295)
                                       *zach@crosnerlegal.com*
                                       9440 Santa Monica Blvd. Suite 301
                                       Beverly Hills, CA 90210
                                       Tel: (866) 276-7637
                                       Fax: (310) 510-6429

                                       *Attorneys for Plaintiff and Proposed Class*

CLASS ACTION COMPLAINT

Civil Code Section 1780(d) Affidavit

I am an attorney duly licensed to practice before all courts of the State of California. I am one of the counsel of record for Plaintiff. This declaration is made pursuant to § 1780(d) of the California Consumers Legal Remedies Act. Defendant has done, and is doing, business in California, including in this District. I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed September 15, 2025 at Carlsbad, California.

By:      *Jennifer L. Macpherson*

JENNNIFER L. MACPHERSON

CROSNER LEGAL, P.C.

CLASS ACTION COMPLAINT